IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | ) Chapter 13 <br> ) <br> ) No. 4:03-bk-06828-JMM |
| ANTHONY and WILLINE BARNETT, | ) <br> ) <br> ) **MEMORANDUM DECISION RE:** <br> ) <br> ) **OBJECTION TO CONFIRMATION** <br> ) |
| Debtors. | ) (Opinion to be Posted) |

This matter comes before the court on Nicole Williams' objection to confirmation of Anthony and Willine Barnett's Chapter 13 Plan. This court held a hearing on the matter on June 20, 2005. After reviewing the arguments, the pleadings, and the entire file, this court now rules.

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b). Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## FACTS

Anthony and Willine Barnett ("Debtors") filed a voluntary Chapter 7 on December 29, 2003. Debtors' Summary of Schedules list $178,885.00 in assets and $286,861.50 in liabilities. Debtors' Schedule I lists a combined monthly income of $3,217.80 and their Schedule J lists their total monthly expenses at $4,888.65. Debtors amended their Schedules several times to include debts they failed to include in their original schedules. Debtors' Amended Schedule F lists 63 nonpriority unsecured creditors totaling $60,140.18 in debt, the majority of which are small medical bills.

Included in Schedule F is a $45,094.00 judgment, paid by garnishment of Debtors' wages, in favor of their daughter, Nicole Barnett Williams ("Williams").

Williams filed an adversary proceeding against Debtors on April 22, 2004, alleging that her unsecured claim against the Debtors should be declared non-dischargeable because of false representations, fraud while acting in a fiduciary capacity, and willful and malicious injury. The court granted partial summary judgment in favor of Williams on the willful and malicious injury count, finding the Pima County Superior Court judgment in favor of Williams in the amount of $45,094.28 to be non-dischargeable. Williams voluntarily dismissed the false representation and fraud counts against the Debtors.

On December 16, 2004, Debtors filed a Motion to Convert Case to Chapter 13. Debtors' case was converted to Chapter 13 on the same date. On February 15, 2005, Debtors filed Amended Schedules I and J, listing a combined monthly income of $3,784.88 and total monthly expenses of only $3,285.00. As to monthly income, the amendment reflects the subtraction of the $555.08 garnishment for the payment of Williams judgment and the subtraction of $12.00 for a purchase plan. As to monthly expenses, the amendment reflects the reduction of the following:

| ITEM | ORIGINAL EXPENSE | AMENDED EXPENSE |
|---|---|---|
| Electricity and Heating Fuel | $199.00 | $100.00 |
| Water and Sewer | $65.00 | $30.00 |
| Telephone | $75.00 | $40.00 |
| Garbage and HOA | $81.00 | $70.00 |
| Home Maintenance | $84.00 | $20.00 |
| Food | $550.00 | $300.00 |
| Clothing | $120.00 | $100.00 |
| Laundry and Dry Cleaning | $40.00 | $30.00 |
| Transportation | $420.00 | $200.00 |
| Recreation | $35.00 | $20.00 |

| Charitable Contributions | $50.00 | $0.00 |
|---|---|---|
| Homeowner's Insurance | $0.00 | $50.00 |
| Pre-Paid Legal | $25.00 | $0.00 |
| Automobile Payment | $407.00 | $0.00 |
| Payments for support of additional dependents not living at your home | $352.00 | $0.00 |

This amendment of monthly expenditures reduced Debtors' expenses in the amount of $1,603.65 per month, leaving Debtors with a discretionary income in the amount of $499.98 per month.

On June 2, 2005, Debtors filed their First Amended Chapter 13 Plan. Debtors' Plan proposes to pay $500 monthly to the Trustee for a duration of 60 months. This amounts to a total payment of $30,000 over the life of the Plan. Debtors' Plan provides for $3,000 in payment of fees to the Trustee and $2,750 in attorneys' fees, which leaves a balance of $24,250 for distribution to creditors. Debtors' Plan then proposes to pay Zion Bank, secured by Debtors' 2002 Dodge Caravan, $16,000 plus interest, for a total amount of approximately $19,465.20, with the remaining balance of the loan in the amount of $5,300 to be treated as unsecured. Debtors' Plan also proposes to pay in full Unsecured Priority Tax Claims in the total amount of $2,419.27, and estimated court costs in the amount of $100.00. After payment to these creditors, $2,265.53 remains to be distributed pro rata to the unsecured creditors. Debtors' general unsecured debt totals $60,030.50, seventy-five percent of which is Williams' claim. This provides for approximately 4% repayment to all general unsecured creditors, of course including Williams.

Williams filed an objection to Debtors' First Amended Chapter 13 Plan on June 13, 2005. Williams' objection incorporated her original objection to Debtors' original Chapter 13 Plan, which stated that the case was not filed in good faith because the amount to be distributed to Williams under Debtors' Chapter 13 Plan would be greatly less than she would receive under Chapter 7, and

that the conversion to Chapter 13 had not been filed in good faith. *See* § 1325(a)(3). The court heard Williams' objection on June 20, 2005.

## ISSUES

1. Is converting to a Chapter 13, after a non-dischargeabilty judgment was entered in Debtors' Chapter 7, per se bad faith?

2. Looking at the totality of the circumstances, was Debtors' Chapter 13 Plan filed in good faith?

## DISCUSSION

### A. Conversion as Per Se Bad Faith

In a Chapter 7, a debt arising from a debtor's willful and malicious injury of another person is normally excepted from discharge, while in a Chapter 13, such debts are dischargeable. § 1328 (this is called the "superdischarge"). In this case, this court has already ruled that Williams' claims against Debtors are nondischargeable in a Chapter 7. However, "an attempt to discharge a debt under Chapter 13 which is not dischargeable under Chapter 7 is not conclusive evidence that the Chapter 13 plan was not made in good faith. . . . It is not conclusively bad faith for a debtor to seek to discharge a debt incurred through his own criminal or tortious conduct, but that factor may be considered." *In re Caldwell*, 895 F.2d 1123, 1125-26 (6th Cir. 1990). "While 11 U.S.C. § 1328(c) permits the discharge in Chapter 13 of debts which are nondischargeable in Chapter 7, application of the good faith standard under Section 1325(a)(3) may nevertheless preclude the Section 1328 discharge. Conversely, a nondischargeable debt does not per se prevent discharge." *In re Warren*, 89 B.R. 87, 93 (9th Cir. BAP 1998).

4

Therefore, even though Williams' claim was ruled nondischargeable in Debtors' Chapter 7 because of willful and malicious injury, the conversion of Debtors' case to Chapter 13 in order to discharge Williams' claim is not per se bad faith.

### B. Good Faith under Section 1325(a)(3)

Looking at whether a Chapter 13 was filed in good faith involves the application of the "totality of the circumstances" test. *In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999). The debtor's burden to prove good faith is "especially heavy" when a "superdischarge" is sought. *Warren*, 89 B.R. at 93. The Ninth Circuit has laid out four factors to help in determining whether a case was filed in good faith:

(1) whether the debtor misrepresented facts in his [petition or] plan, unfairly manipulated the Bankruptcy Code, or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable manner;

(2) the debtor's history of filings and dismissals;

(3) whether the debtor only intended to defeat state court litigation; and

(4) whether egregious behavior is present.

*Leavitt, 171 F.3d at 1224* [citations omitted]. Each of these factors will be looked at in turn.

#### 1. Misrepresentation and Inequitable Manipulation of the Code

The court does not perceive any glaring misrepresentations or inequitable manipulation of the Code on the part of Debtors. The only filing which gives this court pause is Debtors' Amendment to their Schedule J, filed two months after Debtors converted to Chapter 13. With Debtors' combined monthly income, as per their Amended Schedule I, at $3,784.88 and their

5

original monthly expenses at $4,888.65, Debtors had no discretionary income with which to fund Chapter 13 plan payments. Debtors amended their Schedule J, after conversion to Chapter 13, to reduce their total monthly expenses from $4,888.65 to $3,285.00, which gave Debtors approximately $500 a month to fund a Chapter 13 plan. This reduction was done by reducing or eliminating each monthly expense (see table in Discussion, above).

This reduction or elimination of monthly expenses leads the court to wonder whether Debtors overestimated their monthly expenses for purposes of remaining in Chapter 7 and then reduced or eliminated monthly expenses for purposes of having discretionary income with which to fund a Chapter 13 plan. The question is whether this constitutes misrepresentation and/or inequitable manipulation of the Code.

It is well settled that amendments to schedules should be liberally allowed at any time absent a showing of bad faith or prejudice to third parties. *In re Magallanes*, 96 B.R. 253 (9th Cir. BAP 1988). At no time did Williams claim Debtors' amendments to their Schedules were filed in bad faith. While Williams objected to Debtors' plan as being filed in bad faith because Williams would receive less than she would receive under a Chapter 7, that is not a basis for objection. The "best interest of the creditors test" under § 1325(a)(4) simply examines whether creditors will receive more under a proposed Chapter 13 Plan than under a liquidation. A comparison of Debtors' real and personal property with their exemptions reveals only the following non-exempt assets: Debtors' 1999 Ford ($5,960 of which is non-exempt) and Debtors' Chihuahua ($200 of which is non-exempt). The remainder of Debtors' assets, including their residence which is liened, have no value in excess of the applicable statutory exemptions. Therefore, because Debtors are paying more into their Chapter 13 plan ($30,000) than their non-exempt assets would bring at liquidation ($6,160), Debtors have satisfied § 1325(a)(4).

It is also not an inequitable manipulation of the Code to take advantage of Chapter 13's "superdischarge." "Bankruptcy courts have held that although the use of Chapter 13 to obtain the discharge of debts nondischargeable under Chapter 7 by itself is not sufficient to prove bad faith, it is

6

Case 4:03-bk-06828-JMM    Doc 43    Filed 08/03/05    Entered 08/04/05 10:04:18    Desc
Main Document    Page 6 of 10

a factor be considered with others." *In re Gregory*, 705 F.2d 1118, 1121 n.4 (9th Cir. 1983). Therefore, Debtors' attempt to discharge Williams' claim by paying less than 4% of the total claim is not per se bad faith. The Ninth Circuit has held that further inquiry into good faith is warranted when a nominal repayment plan is attended by a nondischargeable debt. *Warren*, 89 B.R. at 94; *In re Street*, 55 B.R. 763, 765-66 (9th Cir. BAP 1985); *In re Goeb*, 675 F.2d 1386, 1391 (9th Cir. 1982); *In re Slade*, 15 B.R. 910, 912 (9th Cir. BAP 1981). Thus, that fact that Debtors converted to Chapter 13 to discharge Williams' otherwise nondischargeable claim weighs against their filing Chapter 13 in good faith, but it is not dispositive.

### 2. Debtors' History of Filings and Dismissals

This second factor requires the review of Debtors' history of filings and dismissals. A review of the record shows no prior filings for either of the Debtors. However, Williams' counsel claims that Mr. Barnett divulged to him, at the Meeting of the Creditors, that he had been bankrupt once before. Debtors' petition lists no bankruptcy filings for either spouse in the last six years. Even assuming Debtors have filed bankruptcy once before this petition, there is no record of serial filings and dismissals, which would evidence bad faith on the part of the Debtors in attempting to discharge Williams' claim. As of the date of this Decision, Debtors are current on their Chapter 13 plan payments. This shows that Debtors are serious about completing their Chapter 13. Therefore, this factor weighs in favor of Debtors' filing Chapter 13 in good faith.

### 3. Intention to Defeat State Court Litigation

This third factor looks at whether Debtors only intended to defeat state court litigation (or a debt declared to be dischargeable). While it is clear that Debtors converted to Chapter 13 in part to defeat Williams' judgment, the question is whether Debtors converted to Chapter 13 *only* to defeat

7

Williams' judgment. Debtors' Schedule D lists $147,221.83 in secured debt, $125,697 of which is owed on a house that Debtors value at $165,000. Debtors' Schedule E lists $2,368.62 owed in state and federal taxes for the year 2003. Finally, Debtors' Schedule F lists a total of $60,030.50 in general unsecured debt, all but $14,936.50 of which is Williams' claim. Even if Williams' judgments did not exist, Debtors would have substantial debt and therefore have an adequate reason for filing for Chapter 13.

Additionally, Debtors filed for bankruptcy on December 29, 2003, over two years after Williams' judgment was entered in her favor. Indeed, until Debtors filed for bankruptcy, $555.08 per month was being garnished from Mr. Barnett's paycheck in order to make payments to Williams. This shows that Debtors attempted, over some period of time, to pay Williams' judgment. Debtors did not immediately file bankruptcy after the judgment was entered but made a good faith effort to pay on Williams' judgment. Additionally, in the two years after Williams' judgment was entered, Debtors racked up $2,364.31 in uncovered medical expenses, which they were unable to pay. It appears from the record that Debtors did not file bankruptcy solely to defeat Williams' judgment. Therefore, this factor weighs in favor of Debtors' filing Chapter 13 in good faith.

### 4. Egregious Behavior

The fourth and final factor considers whether egregious behavior is present. Nothing in the record indicates that Debtors' behavior in this bankruptcy proceeding has been egregious. Debtors have not concealed information from the court, they have not violated injunctions, nor have they filed unauthorized petitions. *See In re Tomlin*, 105 F.3d 933, 937 (4th Cir. 1997). Neither have Debtors violated any court orders. *See In re Bradley*, 38 B.R. 425, 432 (Bankr.C.D.Cal. 1984). Therefore, this final factor weighs in favor of Debtors' filing Chapter 13 in good faith.

## CONCLUSION

While Debtors' conversion to Chapter 13 in order to discharge a nondischargeable debt which they owe to their daughter may be, in the eyes of some, morally questionable behavior, nothing in the law prevents Debtors from doing so. In order for a bankruptcy case to be dismissed on bad faith grounds, the court must consider the totality of the circumstances, and attempting to discharge a nondischargeable debt is only one of the factors to consider. Because the totality of the *Leavitt* factors weigh in favor of Debtors' filing Chapter 13 in good faith, Williams' objection to confirmation of Debtors' Chapter 13 plan is overruled.

A separate order will be entered concurrently with this Memorandum Decision. The plan will be confirmed.

DATED: August 3, 2005.

*/s/ James M. Marlar*
JAMES M. MARLAR
UNITED STATES BANKRUPTCY JUDGE

| | |
|---|---|
| 1 | COPIES served as indicated below this 3 day of August, 2005, upon: |
| 2 | |
| 3 | Eric Ollason<br>182 N. Court Ave.<br>Tucson, AZ 85701 |
| 4 | Email eollason@182court.com<br>Attorneys for Debtors |
| 5 | |
| 6 | Dianne C. Kerns<br>7320 N. La Cholla #154<br>PMB 413 |
| 7 | Tucson, AZ 85741-2305<br>email andrea.hopkins@dcktrustee.com |
| 8 | |
| 9 | Office of the United States Trustee<br>230 North First Avenue, Suite 204<br>Phoenix, AZ 85003-1706 |
| 10 | U.S. Mail |
| 11 | Robert Truman Hungerford<br>123 S. Stone Ave., Ste. 16 |
| 12 | Tucson, AZ 85701<br>Email rth@theriver.com |
| 13 | Attorneys for Nicole Barnett Williams |
| 14 | By /s/ MB Thompson |
| 15 | Judicial Assistant |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |

Case 4:03-bk-06828-JMM    Doc 43    Filed 08/03/05    Entered 08/04/05 10:04:18    Desc
Main Document      Page 10 of 10